No. 13,256.

CONWAY *v.* HEADQUIST ET AL.
(34 P. [2d] 69)

Decided June 18, 1934.

Mr. ERNEST MORRIS, Mr. C. E. WAMPLER, for plaintiff in error.

Mr. A. X. ERICKSON, Mr. EMORY L. O'CONNELL, for defendants in error.

*In Department.*

MR. JUSTICE BUTLER, sitting for MR. CHIEF JUSTICE ADAMS, delivered the opinion of the court.

THIS is a proceeding to review a foreclosure decree.

On December 4, 1929, Louise Volcklandt, the owner of certain Denver lots and the furniture of an apartment house thereon, delivered to Peter Headquist and Albertina W. Headquist her promissory note for $20,000, payable to their order in three years. To secure the payment of the note, she executed and delivered a deed of

trust of the real estate and a chattel mortgage of the furniture. On April 8, 1930, Mrs. Volcklandt conveyed the real estate and sold the furniture to Evelyn Conway, subject to the trust deed and the chattel mortgage, and Mrs. Conway gave a deed of trust of the real estate for the benefit of her husband, Harry Conway. On December 21, 1931, the Headquists sued to foreclose the trust deed and the mortgage and prayed for the appointment of a receiver, alleging a failure to pay interest and taxes. On December 23, 1931, the court appointed Harry Conway, one of the defendants, to collect rents and to hold the same until further order of court ''or turn said rents over to plaintiffs.'' On June 23, 1932, a receiver was appointed to take over and manage the property. On December 6, 1932, the court decreed a foreclosure of the trust deed and the mortgage. On January 23, 1933, the property was sold by the sheriff to the Headquists for $20,500, $500 thereof being for the chattels.

 1. The first exception is that it was error to decree and hold the foreclosure sale of the personalty at a place other than one where a view of the chattels could be had by bidders. The mortgage described the chattels as being in the Tyrone apartments, 1851 Logan street.

(a) The decree ordered the sale to be held at the Tremont street entrance of the court house. Though there was the customary general exception to the decree, at no time, so far as the record discloses, was the trial court's attention called to the objection now urged. It had no opportunity to pass upon the question. In such circumstances, we are not disposed to regard the objection with favor. There was nothing in the decree forbidding the presence of the chattels at the court house at the time of sale. While inconvenient, it was not impossible, to have them there. The objection to the decree on this ground cannot be sustained.

(b) The plaintiff in error is in no position to urge in this court her objection to the sale. Assuming that at

the time of the sale the chattels were not at the place where the sale was held, the plaintiff in error, so far as the record shows, made no objection to the sale, took no step to have it set aside and never in any manner called the trial court's attention to the alleged irregularity. As the trial court was given no opportunity to pass upon the question, we must decline to do so.

2. For the reasons just given, the plaintiff in error is in no position to urge in this court her objection that the property was offered en masse at the sale, with no opportunity for bidding upon separate articles. Besides, the record does not support the contention.

3. For the same reason, the plaintiff in error's objection to the decree and the certificate of sale on the ground that in them she is given the right to redeem from the sale of the chattels, whereas the statute gives her no such right, and that this tended to discourage bidding, need not be considered by us.

4. It is said that the chattel mortgage was invalid as to the plaintiff in error. The argument is that the chattel mortgage was for only $2,000 and was due on its date—we hold that it is not—and the Headquists did not take possession within the statutory time after the maturity of the debt (C. L. §5092, as amended in c. 65, S. L. 1925); and that even if the mortgage was security for the note for $20,000 due in three years—we hold that it was—the lien of the mortgage expired May 10, 1932, for failure of the Headquists to file the sworn statement required by section 5089 of the Compiled Laws, as amended in 1927. S. L. 1927, c. 76.

 It was not necessary to take possession of the property or to file a sworn statement in order to keep the lien of the mortgage in force as against the plaintiff in error. She acquired the property expressly subject to the mortgage, before the maturity of the debt, before any default, before any statement was required to be filed, and when, on any theory, the mortgage was valid as to all persons. A chattel mortgage is valid between the

mortgagor and the mortgagee until the indebtedness is paid or is barred by the statute of limitation. C. L. §5085. One who, before condition broken, buys mortgaged chattels from the mortgagor is in no better position than the mortgagor, and cannot profit by the failure of the mortgagee to take possession or to file the statutory statement. *Arnold v. Stock*, 81 Ill. 407; *Foorman v. Boland*, 59 Mont. 185, 196 Pac. 147.

Counsel for the plaintiff in error call our attention to *Broadhead v. Farmers State Bank of Sedgwick*, 72 Colo. 430, 211 Pac. 376, *Cassell v. Deisher*, 39 Colo. 367, 89 Pac. 773, and other cases holding that where there are two mortgages executed by a mortgagor on the same chattel property to different mortgagees, and the first mortgagee fails to take possession of the mortgaged property within the statutory time after maturity of the debt which is secured, the second mortgagee may, by taking possession before the first mortgagee, divest the lien of the first mortgage and obtain the superior right. Counsel insist that the same rule should apply to a purchaser. We do not think so. There is a material difference between the position of a purchaser and that of a second mortgagee. That difference was pointed out in *Ballinger v. Rezner*, 60 Ill. App. 43, where the court said: "It is argued that a person taking a second mortgage before condition broken under the first is in the same position as a purchaser before condition broken, * * *. A man who buys property which is mortgaged, before the debt is due, may be presumed to buy subject to the mortgage debt, and for that much less than the value, and to intend to pay the debt as a part of the price; but a creditor who merely takes a lien cannot be presumed to so intend." In the case at bar, as we have seen, the plaintiff in error's purchase was made expressly subject to the mortgage.

In *Cassell v. Deisher, supra*, we called attention to *Ballinger v. Rezner, supra*, and said (p. 371): "The court, in a carefully prepared opinion, distinguished be-

tween the rights of a second mortgagee * * * and a subsequent purchaser for value who bought before the maturity of the first mortgage * * *.''

We conclude that the chattel mortgage was valid as to the plaintiff in error.

5. Another assignment of error is that the court erred in decreeing foreclosure, because the time of payment had been extended and the extended time had not expired. On conflicting evidence, the trial court found that the time of payment had not been extended. We cannot interfere with that finding.

The judgment is affirmed.

Mr. Justice Hilliard and Mr. Justice Bouck concur.